UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| WALTER CRUZ-ZAVALA,<br><br>Petitioner,<br><br>v.<br><br>MERRICK B. GARLAND, et al.,<br><br>Respondents. | Case No. 20-CV-06872-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. No. 1 |

Before the Court is Petitioner Walter Cruz-Zavala's ("Petitioner") petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Petitioner is a native of El Salvador who is currently in civil immigration custody. *See* Pet. ¶¶ 9, 33. Petitioner named as Respondents William P. Barr, Attorney General of the United States;[1] Chad Wolf, Acting Secretary of the United States Department of Homeland Security; James McHenry, Director of the Executive Officer of Immigration Review ("EOIR"); David Wetmore, Chairman of the Board of Immigration Appeals; David Jennings, Field Office Director of Immigration and Customs

---

[1] On March 23, 2021, Defendants informed the Court that pursuant to Federal Rule of Civil Procedure 25(d), Merrick B. Garland, the current Attorney General for the United States, is automatically substituted as a defendant in this action. ECF No. 24.

1
Case No. 20-CV-06972-LHK
ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS

Enforcement ("ICE") in San Francisco, California; and Nathan Allen, Warden of the Mesa Verde Detention Facility (collectively, "Respondents").

Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part Petitioner's petition for writ of habeas corpus.

## I. BACKGROUND

Petitioner is 29 years old and has resided in the United States for over 16 years. Pet. ¶ 25. Petitioner first entered the United States in December of 2004 without being lawfully admitted or paroled. ECF No. 1-2, Ex. C at 1.

When Petitioner was 17 years old, Petitioner joined the MS-13 gang. ECF No. 1-2, Ex. A at ¶ 9. On June 18, 2008, Petitioner was arrested for taking a vehicle without the owner's prior consent and for participating in a criminal street gang. ECF No. 1-4, Ex. K, at 4. Petitioner subsequently pled guilty to participation in a criminal street gang in violation of California Penal Code § 186.22 and was sentenced to 45 days in jail. Pet. at ¶ 38; ECF No. 1-5, at 92 (Ex. V); *Cruz-Zavala v. Barr*, 445 F. Supp. 3d 571, 573 (N.D. Cal. 2020).

In October of 2008, Petitioner was arrested and charged with federal racketeering and conspiracy charges, for which he spent nearly 3 years in solitary confinement in federal custody. Pet. at ¶ 41; *Cruz-Zavala*, 445 F. Supp. 3d at 573. During his time in federal custody, Petitioner attacked and injured a sheriff's deputy. ECF No. 1-2, Ex. C at 5. Petitioner was ultimately acquitted of these charges in 2011. Pet. at ¶ 41. Petitioner was then placed in ICE custody, but released on bond in September of 2011. *Cruz-Zavala*, 445 F. Supp. 3d at 573; ECF No. 1-4, Ex. K, at 5.

While released on bond, Petitioner was convicted of driving under the influence ("DUI") five times between 2013 and 2015, three of which were misdemeanor convictions and two of which were felony convictions. ECF No. 1-2, Ex. A at ¶ 4. The last DUI conviction resulted in physical injuries to Petitioner's brother, who was a passenger in Petitioner's vehicle. *Id.*

On July 2, 2017, while still released on bond, Petitioner was involved in an argument with his neighbor and her 14-year-old son that resulted in Petitioner brandishing a loaded firearm while

intoxicated and shooting himself in the leg. ECF No. 1-4, Ex. K, at 4; Resp. at 3. Petitioner was arrested for exhibiting a firearm, unlawful possession of a firearm, and negligent discharge of a firearm. *Id.* Petitioner was eventually convicted of carrying a concealed firearm, in violation of California Penal Code § 25400. *Id*; Ex. A at ¶ 7; ECF No. 1-5, Ex. V at ¶ 22.

The Department of Homeland Security ("DHS") first initiated removal proceedings against Petitioner via notice to appear in January of 2005. ECF No. 1-2, Ex. C at 1. The notice to appear charged Petitioner with removability "as an alien present in the United States without being admitted or paroled." *Id.* Petitioner admitted the factual allegations at a hearing on March 2, 2005 and conceded the charge of removability. *Id.* However, Petitioner subsequently applied for asylum and withholding of removal, as well as protection under the Convention Against Torture. *Id.* at 2. Petitioner later filed an application seeking suspension of deportation or special rule cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act. *Id.*

While those applications were pending, ICE again took Petitioner into custody in July of 2017, following his arrest for carrying a concealed firearm. Pet. ¶ 46. In 2017, while in immigration detention, Petitioner was observed on closed-circuit television ("CCTV") assaulting another detainee. ECF No. 1-2, Ex. C at 5.

Petitioner's subsequent proceedings before the Immigration Court concern two different issues: (1) whether Petitioner can be removed from the United States to El Salvador or is entitled to asylum or some other form of relief under the Convention Against Torture ("CAT"); and (2) whether Petitioner is eligible for release on bond during the immigration proceedings or Petitioner must be detained until a final decision is reached on his order of removal.

On May 14, 2018, the Immigration Judge ("IJ") granted Petitioner's request for CAT relief but denied all other requests for relief from removal. *Id.* at 13. On May 24, 2018, the government appealed the IJ's grant of CAT relief to the Board of Immigration Appeals ("BIA"). Petitioner cross-appealed the IJ's denial of his alternative requests for relief. Pet. ¶ 49. In June of 2019, the BIA dismissed Petitioner's appeal of the IJ's denial of asylum and withholding of removal under the CAT, but remanded Petitioner's case to the IJ to clarify what type of CAT relief had been

granted. ECF No. 1-2, Ex. H ("BIA Remand Order"). On remand, the IJ clarified that Petitioner was ineligible for withholding of removal under the CAT because he had committed a "particularly serious crime." ECF No. 1-2, Ex. I. However, the IJ found that Petitioner was eligible for deferral of removal under the CAT, a more limited form of relief than withholding of removal. *Id.* DHS appealed the IJ's order granting deferral of removal under the CAT. Pet. at ¶ 54.

With respect to bond hearings, Petitioner withdrew his first request for a bond hearing on August 4, 2017. *Cruz-Zavala*, 445 F. Supp. 3d at 573. Then, on January 24, 2018, Petitioner waived his right to a bond hearing because Petitioner had an outstanding state warrant. *Id.* However, on April 11, 2019, Petitioner motioned for a bond hearing before the IJ. Pet. at ¶ 50. The IJ held a bond hearing on May 1, 2019, during which the IJ explicitly declined to apply the burden of proof requested by Petitioner and ultimately denied bond. *See* ECF No 1-2, Ex. F. Petitioner appealed the denial of bond, and the BIA affirmed. *Id.*, Ex. G.

On March 29, 2020, Petitioner filed a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2241. *Cruz-Zavala v. Barr*, Case No. 20-CV-021420-LHK, ECF No. 1. Petitioner asserted two claims for relief: (1) that the conditions of his confinement, which he alleged heightened his risk of exposure to COVID-19, violated his substantive due process rights under the Fifth Amendment; and (2) that Petitioner's prolonged detention without a constitutionally compliant bond hearing violated his procedural due process rights under the Fifth Amendment. *Id.* On March 30, 2020, Petitioner filed a motion for a temporary restraining order. *Id.*, ECF No. 3-1.

On April 17, 2020, the Court granted in part Petitioner's request and ordered Respondents to provide Petitioner with a constitutionally compliant bond hearing within 30 days. *Cruz-Zavala v. Barr*, 445 F. Supp. 3d at 579. Specifically, the Court ordered Respondents to provide Petitioner with a bond hearing before an IJ with the power to grant Petitioner's release on bond if Respondents failed to establish "by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community." *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011). The Court

4

Case No. 20-CV-06972-LHK
ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS

further required the IJ to consider Petitioner's length of detention when deciding whether release on bond was appropriate. However, the Court clarified that the IJ may also consider the fact that Petitioner withdrew his request for a bond hearing on August 4, 2017 and waived his right to a bond hearing on January 24, 2018 because Petitioner had an outstanding state warrant. *Id.* The Court denied Petitioner's others forms of requested relief and denied his temporary restraining order as moot. *Id.* at 580.

On May 8, 2020, Petitioner received a bond hearing before an IJ. Pet at ¶ 56. On May 28, 2020, the IJ found that Petitioner would pose a danger to the community if released and therefore denied Petitioner's request for bond release. ECF No. 1-4, Ex. K at 6. Petitioner appealed the IJ's denial of bond to the BIA. ECF No. 1-4, Ex. U.

On July 14, 2020, the BIA remanded Petitioner's case concerning removal to El Salvador back to the IJ to "make an independent determination regarding the [Petitioner's] eligibility for protection pursuant to the Convention Against Torture." ECF No. 1-4, Ex. N. On August 24, 2020, the IJ issued a new decision finding that Petitioner was not likely to be tortured upon returning to El Salvador. ECF No. 1-4, Ex. O. The IJ therefore denied Petitioner's application for withholding and deferral of removal under CAT. *Id.* at 17. Furthermore, the IJ "ordered that [Petitioner] be removed from the United States to El Salvador." *Id.* at 18.

On August 24, 2020, Petitioner attacked and then engaged in physical combat with another detainee until staff arrived and could separate them. ECF No. 8-1, at 2.

On September 2, 2020, Petitioner filed a motion with the Immigration Court for custody redetermination on account of materially changed circumstances and argued that Petitioner should be released immediately from detention for the pendency of his immigration proceedings. ECF No. 1-5, Ex. R. The IJ denied Petitioner a new bond hearing on September 8, 2020 because the IJ found that Petitioner had not demonstrated "materially changed circumstances" pursuant to 8 C.F.R. § 1003.19(e). ECF No. 1-5, Ex. T. Petitioner appealed the IJ's denial of a new bond hearing. ECF No. 1-5, Ex. U.

On September 10, 2020, Petitioner appealed the IJ's denial of Petitioner's application for

5

1  withholding and deferral of removal under CAT to the BIA. Pet. at ¶ 70. That appeal is currently
2  pending.
3        On October 6, 2020, Petitioner filed a petition for writ of habeas corpus in the instant case.
4  ECF No. 1.
5        On October 30, 2020, Petitioner filed a motion with the BIA to supplement the IJ record
6  with respect to the September 8, 2020 bond denial or to remand to the Immigration Court in the
7  alternative. ECF No. 8-1, at ¶ 5 ("Molinari Decl.").
8        On November 13, 2020, the Court ordered Respondents to show cause why the petition for
9  writ of habeas corpus should not be granted. ECF No. 5. On November 18, 2020, the Court filed
10 an amended order to show cause. ECF No. 5. On December 10, 2020, Respondents filed a
11 response to the Court's order to show cause. ECF No. 8. On December 15, 2020, Petitioner filed
12 a traverse. ECF No. 9.
13       On February 5, 2021, Petitioner filed a motion in this Court for leave to file supplemental
14 exhibits. ECF No. 18. On February 9, 2021, Respondents filed an opposition. ECF No. 19. The
15 same day, Petitioner filed a reply. ECF No. 20. Respondents argue that these supplemental
16 documents violate Civil L.R. 7-3(d), which provides that "[o]nce a reply is filed, no additional
17 memoranda, papers or letters may be filed without prior Court approval." The Court notes that
18 Petitioner has failed to provide a legal basis to supplement the record with new evidence that
19 addresses the merits of this case almost a month after Petitioner's reply brief was filed.
20 Nonetheless, because these supplemental exhibits do not change the Court's rulings in this case,
21 the Court GRANTS Petitioner's administrative motion for leave to supplement the record.
22       On March 1, 2021, Petitioner filed a status report to inform the Court that on February 26,
23 2021, the BIA denied Petitioner's appeal arising from the denial of bond at the May 8, 2020 bond
24 hearing and the denial of Petitioner's motion for custody redetermination in light of materially
25 changed circumstances filed on September 8, 2020. ECF No. 23, at 2.
26       Petitioner currently remains in ICE detention at the Mesa Verde Detention Facility in

Bakersfield, California.² On August 10, 2020, Petitioner was diagnosed with COVID-19, but he has now recovered. ECF No. 1-2, Ex. A, at ¶¶ 25, 29. On March 23, 2021, Defendants informed the Court that on March 15, 2021, Kern County made available the Johnson & Johnson vaccine to the Mesa Verde Detention Facility to vaccinate all detainees, including Petitioner. ECF No. 24 at 2.

## II.   DISCUSSION

28 U.S.C. § 2241(c)(3) allows a district court to grant a writ of habeas corpus for an individual "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In the instant habeas petition, Petitioner asserts three separate claims. First, Petitioner argues that his detention is excessive in relation to DHS's stated purpose for detaining him and therefore violates the Due Process Clause of the Fifth Amendment. Pet. ¶¶ 184–188. Second, Petitioner argues that his Due Process rights have been violated because removal is not significantly likely in the foreseeable future and the government continues to detain him. *Id.* ¶¶ 198–201. Third, Petitioner argues that the IJ violated Petitioner's statutory and regulatory right to a constitutionally complaint bond hearing when the IJ denied Petitioner's motion for custody redetermination on the basis of materially changed circumstances. *Id.* ¶¶ 189–197. Defendants argue, by contrast, that the Court lacks jurisdiction to consider Petitioner's claims and that the IJ's decisions are discretionary and therefore not subject to review on a petition for writ of habeas corpus.

The Court first sets forth the statutory framework governing immigration detention before turning to Petitioner's claims.

### A.   Statutory Framework

---

² The Court notes that, ordinarily, jurisdiction for a § 2241 habeas corpus petition challenging "present physical confinement" must be filed in the district where the petitioner is confined: here, the Eastern District of California. *See Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004). However, these rules most likely approximate personal jurisdiction, and thus can be waived by the government on behalf of the immediate custodian. *Id.* at 452 (Kennedy, J., concurring). Here, Respondents did not make a limited appearance but instead responded to the merits of the petition. *See* ECF No. 8. Thus, the Court deems any personal jurisdiction issue in the instant petition to have been waived.

Several different provisions of the Immigration and Nationality Act confer on the government the authority to detain noncitizens during immigration proceedings. *See* 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a). The applicable "statutes apply at different stages of an alien's detention." *Diouf v. Mukasey*, 542 F.3d 1222, 1228 (9th Cir. 2008). Moreover, "[w]here an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

There is no dispute that Petitioner is currently detained pursuant to 8 U.S.C. § 1226(a). Pet at ¶ 90. This provision "authorizes the Attorney General to arrest and detain an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018). Detention pursuant to § 1226(a) is discretionary in nature; indeed, under 8 U.S.C. § 1226(a), "an alien *may be arrested and detained* pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added).

The Ninth Circuit has held that 8 U.S.C. § 1226(a) requires an initial bond hearing. *See Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 951 (9th Cir. 2008) ("[W]e hold that § 1226(a) must be construed as requiring the Attorney General to provide the alien with such a [bond] hearing."); *accord Jennings v. Rodriguez*, 138 S. Ct. at 847 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."). Therefore, under Ninth Circuit caselaw, a noncitizen is entitled to an initial bond hearing once he is detained pursuant to § 1226(a). On May 8, 2020, Petitioner received a bond hearing before an IJ. Pet at ¶ 56.

If, as is the case here, a noncitizen is denied bond, he may request a subsequent bond hearing "upon a showing that the alien's circumstances have materially changed since the prior bond determination." 8 C.F.R. § 1003.19(e).

**B. Petitioner has Exhausted Administrative Remedies**

Defendants first argue that the Court lacks jurisdiction to consider Petitioner's claims because Petitioner has failed to exhaust his administrative remedies. Resp. at 5. The Ninth Circuit

8
Case No. 20-CV-06972-LHK
ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS

"require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 35 (2006).

On May 8, 2020, Petitioner received a bond hearing before an IJ. Pet at ¶ 56. On May 28, 2020, the IJ found that Petitioner would pose a danger to the community if released and therefore denied Petitioner's request for bond release. ECF No. 1-4, Ex. K at 6. Petitioner appealed the IJ's denial of bond release to the BIA. ECF No. 1-4, Ex. U. On September 2, 2020, Petitioner filed a motion with the Immigration Court for immediate release based on materially changed circumstances. Petitioner's motion for release based on materially changed circumstances was denied by the Immigration Court on September 8, 2020. Petitioner appealed that denial. The BIA denied both appeals regarding Petitioner's custodial status on February 26, 2021. *See* ECF No. 23 at 4.

On September 10, 2020, Petitioner appealed the IJ's denial of Petitioner's application for withholding and deferral of removal under CAT to the BIA. Pet. at ¶ 70. That appeal is currently pending. However, Petitioner does not challenge the IJ's denial of CAT relief in this petition for writ of habeas corpus. Rather, Petitioner challenges only his custodial status under 8 U.S.C. § 1226(a), and argues that he should be released from detention for the pendency of his immigration proceedings. Therefore, because the BIA has denied Petitioner's appeal of the IJ's denial of bond release and denial of custody redetermination, Petitioner has exhausted his administrative remedies.

As a result, the Court finds that the prudential administrative exhaustion requirement has been satisfied. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (discussing the prudential administrative exhaustion requirement).

**C. The Court has Jurisdiction over Petitioner's Claims**

Defendants next argue that the Court lacks jurisdiction over Petitioner's claims in his petition for writ of habeas corpus because § 1226(e) provides that "[t]he Attorney General's

9

discretionary judgment regarding the application of this section shall not be subject to review." 8 U.S.C. § 1226(e). Thus, the Court does not have jurisdiction over challenges to the Attorney General's discretionary bond determinations under § 1226(a). *See Hernandez*, 872 F.3d at 987. However, "[t]hat provision does not . . . preclude habeas jurisdiction over constitutional claims or questions of law." *Id.* (internal quotation marks and citation omitted). Rather, "claims that the discretionary [bond] process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241." *Singh v. Holder*, 638 F.3d at 1202. As such, "[t]he Court has jurisdiction to review the IJ's discretionary bond denial only 'where that bond denial is challenged as legally erroneous or unconstitutional.'" *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 773 (N.D. Cal. 2019) (citing *Kharis v. Sessions*, 2018 WL 5809432, at *4 (N.D. Cal. Nov. 6, 2018)). Thus, because Plaintiff's challenge concerns "constitutional claims [and] questions of law," the Court has jurisdiction over the claims in Petitioner's petition for writ of habeas corpus.

However, the Court is cognizant that although "a district court has jurisdiction to review mixed questions of law and fact," it "must be careful not to encroach upon the IJ's discretionary weighing of the evidence." *Kharis*, 2018 WL 5809432, at *5 (internal quotation marks omitted).

Having found that the Court has jurisdiction over Petitioner's claims in his petition for writ of habeas corpus, the Court now turns to the merit of Petitioner's claims.

**D. Petitioner's Continued Detention does not Violate Due Process**

Petitioner first argues that his detention has become excessive and therefore punitive in violation of the Due Process Clause of the Fifth Amendment. Pet. at ¶¶ 184–188. Petitioner argues that his detention is excess because there are available alternatives to detention that are less harsh and would accomplish the purpose of assuring his presence at future proceedings. *Id.* at ¶¶ 186–187. Petitioner argues that he is therefore entitled to immediate release. *Id.* at 60. The Court finds that Petitioner's argument lacks merit.

Petitioner does not dispute that § 1226(a) allows the government to detain him prior to a determination of whether he is subject to removal. Instead, Petitioner cites the United States

10

Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), for the proposition that Petitioner's detention has become unconstitutional because there are available alternatives to detention that are less harsh and would accomplish the same purpose.³ Pet. at ¶ 185. *Zadvydas* does not stand for such a broad proposition.

In *Zadvydas*, the United States Supreme Court was confronted with noncitizens who were detained after an entry of final removal pursuant to § 1231(a)(6). 533 U.S. at 683. After an entry of final removal, there is a 90-day removal period, during which noncitizens must be held in custody. § 1231(a)(2). If the government has failed to deport a noncitizen after that 90-day period, the post-removal-period statute provides that "the Government 'may' continue to detain an alien who still remains here or release that alien under supervision." *Zadvydas*, 533 U.S. at 683 (citing § 1231(a)(6)). Appellants in *Zadvydas* had not been deported after 90 days because the government was unable to find a country to which appellants could legally be deported. *Id.* at 684. However, the government continued to detain appellants because appellants fell into one of the applicable categories under § 1231(a)(6) that allow for continued post-removal-period detention. Thus, appellants could not be deported, but also were subject to continued detention, and thus appellants had no clear path out of that "perhaps permanent" detention. *Id.* at 692.

The United States Supreme Court was therefore faced with the question of "whether aliens that the Government finds itself unable to remove are to be condemned to an indefinite term of imprisonment within the United States." *Id.* at 695. Given that noncitizens in post-removal-period detention could be held permanently, the United States Supreme Court held that such detention was constitutionally impermissible once it became clear that removal was no longer reasonably foreseeable. Accordingly, the United State Supreme Court held that after six months

---

³ Petitioner also cites two cases from the criminal and civil commitment law context concerning the detention of citizens. *See Foucha v. Louisiana*, 504 U.S. 71 (1992) (state could not indefinitely hold individual who was no longer "mentally ill," but who had antisocial personality condition that sometimes led to aggressive conduct); *Jones v. Blanas*, 393 F.3d 918, 934 (9th Cir. 2004) (a civil detainee who is awaiting adjudication is entitled to conditions of confinement that are not punitive in nature). Petitioner does not explain the application of these two cases to the context of civil immigration detention, and the Court finds no support for their application to Petitioner's detention.

11
Case No. 20-CV-06972-LHK
ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS

in post-removal-period detention "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Once there is no longer a significant likelihood of removal in the reasonably foreseeable future the noncitizen may no longer be detained. *Id.*

*Zadvydas* therefore stands for the proposition that after six months in post-removal-period detention, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. Petitioner argues that his continued detention violates due process because there are less harsh viable alternatives to detention that would accomplish the same purpose. *Zadvydas* offers no support for this contention. Thus, the Court finds no support in *Zadvydas* for Petitioner's argument.

Furthermore, Petitioner's detention is clearly authorized by § 1226(a), and the Attorney General has discretionary judgment under 8 U.S.C. § 1226 that is not subject to judicial review. *See Jennings v. Rodrigues*, 138 S. Ct. at 841 (Section 1226(e) "precludes an alien from challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release." (internal quotation marks omitted)). Plaintiff was given a bond hearing on May 8, 2020, and Plaintiff does not challenge that bond hearing in his petition. At that bond hearing, the IJ determined that the government "demonstrated by clear and convincing evidence that the Respondent poses a danger to the community," and that "the extensiveness, nature, and recency of the Respondent's criminal record prevents his release during the pendency of his proceedings." ECF No. 1-4, Ex. K, at 3, 5. Thus, if the Court were to find that Petitioner should be released because he has identified less harsh viable alternatives to detention that accomplish the same purpose, the Court must set aside the discretionary judgment of the Attorney General in violation of § 1226(e). The Court has no jurisdiction to do so. *See Jennings v. Rodrigues*, 138 S. Ct. at 841 (Section 1226(e) precludes challenges to the Attorney General's discretionary judgement under 8 U.S.C. § 1226).

Accordingly, the Court finds that Petitioner's continued detention does not violate due process.

**E. Petitioner's Removal is Reasonably Foreseeable**

Second, Petitioner argues that his due process rights have been violated because Petitioner's removal is not significantly likely in the reasonably foreseeable future. Pet. at ¶¶ 198–201. In support of this argument, Petitioner points to *Zadvydas* and the Ninth Circuit's holdings in *Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008), and *Nadarajah v. Gonzales*, 443 F.3d 1069 (9th Cir. 2006). Petitioner argues that these decisions support his contention that his ongoing detention violates due process because his removal is not reasonably foreseeable.

*Prieto-Romero* and *Nadarajah* concern different circumstances. In *Nadarajah*, the BIA "awarded [appellant] asylum twice, as well as protection under the Convention Against Torture," and yet appellant continued to be detained for over five years while the government appealed those agency determinations. 443 F.3d at 1071, 1081. The Ninth Circuit held that appellant had demonstrated that there was no significant likelihood of removal in the reasonably foreseeable future because, as a result of the IJ's asylum and CAT determinations, "the government is not entitled to remove [appellant] to Sri Lanka, and no other country has been identified to which [appellant] might be removed." *Id.* at 1081. This in turn provided a "powerful indication of the improbability of his foreseeable removal." *Id.* at 1082. Thus, appellant, like the appellants in *Zadvydas*, could not be legally removed and was likely to be detained permanently without a foreseeable chance removal. The Ninth Circuit therefore granted appellant's request for release from detention. *Id.*

In *Prieto-Romero*, the Ninth Circuit clarified that *Nadarajah* did not hold that a noncitizen's removal is no longer "reasonably foreseeable" whenever there is "some degree of uncertainty as to when his detention will conclude." 534 F.3d at 1064. Rather, the Ninth Circuit explained that appellant's removal in *Nadarajah* was not reasonably foreseeable because he could not be removed to his home country and no other country had been identified that would accept him. Thus, the government "could not lawfully remove him." *Id.* at 1084.

In *Prieto-Romero*, by contrast, the appellant had been found removeable by the IJ and BIA, and had sought judicial relief from that removal order. As a result, although the appellant

13

been detained pursuant to § 1226(a) for over three years, there was no legal impediment to his eventual removal. *Id.* at 1056, 1064. As such, the length of the appellant's detention and the uncertainty about when his eventual removal would take place did not mean that his removal was not reasonably foreseeable. *Id.* at 1065. The Court concluded that the appellant's "removal has certainly been delayed by his pursuit of judicial review of his administratively final removal order, [but] he is not stuck in a 'removable-but-unremovable limbo' as the petitioners in *Zadvydas* were." *Id.* at 1063. The Court therefore held that the appellant's "detention remains statutorily authorized." *Id.* at 1068.

The facts of Petitioner's case fall squarely within the holding of *Prieto-Romero*, not *Zadvydas* or *Nadarajah*. Although Petitioner was originally granted CAT relief by the IJ, the IJ later denied Petitioner's application for withholding and deferral of removal under CAT after a remand from the BIA. ECF No. 1-4, Ex. O. The IJ therefore "ordered that [Petitioner] be removed from the United States to El Salvador." *Id.* at 18. Thus, unlike in *Zadvydas* or *Nadarajah*, there is no legal impediment to Petitioner's eventual removal. The length of Petitioner's detention and the uncertainty as to when his detention will end do not mean that Petitioner's removal is not reasonably foreseeable. "[Petitioner] foreseeably remains capable of being removed—even if it has not yet finally been determined that he should be removed—and so the government retains an interest in 'assuring [his] presence at removal.'" *Id.* at 1065 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001)). As such, following the Ninth Circuit's holding in *Prieto-Romero*, the Court finds that Petitioner's continued detention does not violate due process because Petitioner foreseeably remains capable of being removed.

**F. The IJ Applied the Incorrect Legal Standard in Denying Petitioner's Motion for Custody Redetermination**

Finally, Petitioner argues that the IJ erred as a matter of law when the IJ denied Petitioner's motion for custody redetermination on the basis of materially changed circumstances. Pet. at ¶ 190.

Petitioner had prior bond hearings in May of 2019 and May of 2020. ECF No. 1-5, Ex. T,

at 1. At the May 8, 2020 bond hearing, and pursuant to this Court's April 17, 2020 Order, the IJ required the government to "establish, by clear and convincing evidence that the Respondent's continued detention is justified because the Respondent is a danger to the community or a flight risk." ECF No. 1-4, Ex. K, at 3. After considering all of the evidence submitted, the IJ found that that "the Department demonstrated by clear and convincing evidence that the Respondent poses a danger to the community." *Id.* The IJ focused in particular on Petitioner's "numerous contacts with law enforcement" between 2010 and 2017, including an incident on December 25, 2017, in which Petitioner, while in immigration custody, was seen on CCTV assaulting another detainee. *Id.* at 4–5. The IJ also noted that in 2010, while in state custody, Petitioner assaulted a sheriff's deputy. *Id.* at 5. The IJ acknowledged that Petitioner offered a plan for release that included Petitioner attending Alcoholics Anonymous classes and participation in life coaching and counseling classes. Furthermore, Petitioner would "check in with Alameda County Public Defender's Social Work Program and be under the supervision of the Alameda County Probation Department, as a result of his conviction for carrying a concealed weapon." *Id.*

However, the IJ noted that after the Immigration Court released Petitioner on bond in 2011, Petitioner committed and was convicted of five DUIs, including one that injured a passenger, and carrying a concealed firearm. *Id.* The IJ further pointed out that but for Petitioner's illegal conduct while on bond, Petitioner would have remained out of custody during the pendency of his immigration proceedings. *Id.* Instead, Petitioner chose to engage in repeated conduct that endangered the well-being of his community. As such, the IJ found that Petitioner's continued detention and future rehabilitation plans did not "overcome the evidence of his potential dangerousness. Put simply, the extensiveness, nature, and recency of the Respondent's criminal record prevents his release during the pendency of his proceedings." *Id.* at 5. The IJ therefore denied Petitioner release on bond. *Id.*

On September 1, 2020, Petitioner filed a motion for custody redetermination based on his length of detention and changed circumstances, pursuant to 8 C.F.R. § 1003.19(e). ECF No. 1-5, Ex. R, at 1. Under § 1003.19(e), "an alien's request for a subsequent bond redetermination shall

15
Case No. 20-CV-06972-LHK
ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS

be made in writing and shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e). Petitioner argued that there were three materially changed circumstances since his last bond hearing. First, residential treatment programs were again accepting new residents, and Petitioner was accepted into a six-month residential substance abuse program. Ex. R, at 1. Second, law enforcement had agreed to increase supervision over Petitioner to weekly, as opposed to bi-weekly, check-ins with Petitioner if he was released. *Id.* at 2. Third, the BIA's July 14, 2020 remand of Petitioner's appeal means that it could be years before there is a final resolution of Petitioner's case. *Id.* at 3. In light of these changed circumstances, Petitioner requested immediate release, or in the alternative, conditional release from custody to participate in the Salvation Army's six-month rehabilitation program. *Id.*

On September 8, 2020, the IJ denied Petitioner's motion for custody redetermination upon finding that the three changed circumstances Petitioner provided were not "material" under 8 C.F.R. § 1003.19(e). ECF No. 1-5, Ex. T. The IJ held that because Petitioner's changed circumstances were not "material" under § 1003.19(e), Petitioner was not entitled to a new bond hearing. Ex. T at 2. Petitioner appealed the IJ's decision, and the BIA denied Petitioner's appeal on February 26, 2021. ECF No. 23, at 2.

Petitioner now argues that the IJ erred as a matter of law by defining "materially changed circumstances" as circumstances that have "a reasonable chance of changing the Immigration Judge's prior custody decision." ECF No. 1-5, Ex. T at 2. Pointing to *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 774 (N.D. Cal. 2019), and *De Paz Sales v. Barr*, 2019 WL 4751894, at *8 (N.D. Cal. Sep. 30, 2019), Petitioner argues that the IJ should have instead considered whether the changes themselves were material and not whether the changes were sufficient to change the outcome of the prior custody determination. Pet. at ¶ 194.

The Court agrees. In *Lopez Reyes v. Bonnar*, the court held that the IJ committed legal error when the IJ "addressed the ultimate legal issue—whether Petitioner is a current danger to society—as opposed to whether Petitioner demonstrated that his circumstances had materially

changed to warrant a second bond hearing." 362 F. Supp. 3d at 774.  Similarly, in *De Paz Sales v. Barr*, the court held that the IJ erred as a matter of law in denying petitioner's motion for a new bond hearing because the IJ "focused on whether the new evidence would have changed the IJ's finding that the Petitioner failed to meet his burden of proof that he was not a danger to the community," rather than "whether the changes themselves were material." 2019 WL 4751894, at *8.  The court held that focusing "on whether the new evidence would have changed the IJ's finding" was "not the correct legal standard." *Id.*

The IJ committed the same legal error in the instant case.  The IJ stated that he would define "material change" as a change that had "a reasonable chance of changing the Immigration Judge's prior custody decision." ECF No. 1-5, Ex. T at 2.  Furthermore, the IJ held that Petitioner's circumstances had not materially changed because "[a] moderate increase in the intensity of the treatment program and the degree of supervision cannot be reasonably expected to change the outcome of the prior custody determination." *Id. Lopez Reyes* and *De Paz Sales* make clear that this is the incorrect legal standard for "material change" under 8 C.F.R. § 1003.19(e).  The IJ must instead focus on whether Petitioner's "circumstances [have] materially changed," not whether "the new evidence would have changed the IJ's finding." *De Paz Sales*, 2019 WL 4751894, at *8; *Lopez Reyes*, 362 F. Supp. 3d at 774 (same).

Petitioner argues that he is therefore entitled to immediate release. Pet. at 60.  However, the Court is careful to "not encroach upon 'the IJ's discretionary weighing of the evidence.'" *Kharis v. Sessions*, 2018 WL 5809432, at *5 (quoting *Slim v. Nielson*, 2018 WL 4110551, at *4 (N.D. Cal. Aug. 29, 2018)).  Rather, the Court finds only that the IJ applied the incorrect legal standard in denying Petitioner a new bond hearing under 8 C.F.R. § 1003.19(e).

Petitioner has not otherwise established that he is entitled to immediate release or a new bond hearing.  Moreover, the Court cannot determine whether the IJ would have reached the same determination regarding whether Petitioner was entitled to a new bond hearing if the IJ had applied the correct legal standard.  Therefore, the proper remedy is to require the IJ to reconsider the request for a new bond hearing under the correct legal standard.  *See Lopez Reyes v. Bonnar*,

17

2018 WL 7474861, at *10 (N.D. Cal. Dec. 24, 2018) (requiring the IJ to reconsider the request for an additional bond hearing after the IJ erred in determining that there had not been a material change in circumstances).

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Petitioner's petition for writ of habeas corpus.  The Immigration Judge shall reconsider Petitioner's motion for custody redetermination pursuant to 8 C.F.R. § 1003.19(e) under the correct legal standard within thirty (30) days.  However, the Court DENIES Petitioner's other forms of relief requested in his petition for writ of habeas corpus.

**IT IS SO ORDERED.**

Dated: March 29, 2021

_____
LUCY H. KOH
United States District Judge

18
Case No. 20-CV-06972-LHK
ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS